AUGUST TERM
1839.

Tombs,
vs,
Tucker,

TOMBS vs TUCKER.

1  A Court of equity will not set aside a conveyance on the ground of mistake, unless it is clear from the evidence that the party conveying acted under a mistake or misconception in relation to the property conveyed.

2. The declaration of the defendant, that there was a mistake in the conveyance would be strong evidence against him, in the absence of evidence showing clearly that no mistake was made.

Appeal from the Circuit court of Ray county.

Opinion of the court delivered by Tompkins Judge.

" Tombs and others claiming as heirs and representatives of Daniel Hudgins filed their bill of complaint in the circuit court against the respondent Tucker stating that in the month of June 1835, Daniel Hudgins sold to Tucker the respondent the south half of the south east quarter of section twenty-one in fractional township fifty one and by mistake conveyed to said Tucker the east half of the said quarter section instead of the south half of the same that after the execution of the deed by Hudgins to Tucker for the east half as aforesaid it was discovered that a mistake was made, and it was agreed that it should be corrected by Hudgins conveying to Tucker the south west quarter of the said quarter section, and Tucker conveying to Hudgins the north east quarter of the said quarter section that is to say, the north half of the east half of the said quarter section, which east half as alledged and stated in the bill; Hudgins had by mistake; conveyed to Tucker instead of the south half that in pursuance of the agreement to correct the mistake; Hudgins in his life time, conveyed to Tucker the south west quarter of the said quarter section but that Tucker had failed to convey in exchange for it the North east quarter of the said quarter section and the bill concludes by praying that he may be decreed to convey &c. The answer of Tucker denies that there was any mistake made, and states that Hudgins was the father of his Tucker's wife and intended, had he lived, to give him the whole quarter section but was prevented by his sudden death; the answer denies any agreement betwixt the respondent Tucker and the deceased Hudgins to correct the mistake alledged and stated in the bill, by Tucker convey-

ing to Hudgins the N. E. quarter and Hudgins in considera-
tion thereof conveying to him the S. W. quarter of the
quarter section in the bill mentioned. The deeds of Hud-
gins showed on their face consideration in money. A wit-
ness who wrote the two deeds from Hudgins to Tucker
stated that when the first deed was written which conveyed
the east half of the quarter section, Hudgins produced the
two patents for two halves, that is to say, for the east half
and the west half of the quarter section, and after a careful
examination of them handed to the witness the one for the
east half, from which he drew the conveyance to Tucker;
and the witness stated it was written according to Hudgins
instructions; the witness stated, that after it was written he
read it over to Hudgins carefully, and asked him if it was
right, and Hudgins answered it was all right.—That when
the second deed was written, a mistake in the first was
spoken of by some one; but whether Hudgins spoke of the
mistake the witness did not recollect. That after the exe-
cution of the second deed from Hudgins to Tucker, Tucker
said to Hudgins, he would then make a deed to H. but his
wife was not there and H. answered, never mind, Kitty
(meaning Tucker's wife) will make a deed when I call on
her. The complainant then proved that, before the first
deed was made, the deceased told the witness that Tucker
had *moved out to this country*, and that he intended to give
him the south half of the quarter section on which he then
lived, that he never intended to put it in the power of one of
his children to turn him out of doors, that the deceased liv-
ed on the east half of the quarter section which was the
same mentioned in the bill.

The same witness further stated that he was at the house
of the deceased on the night he died; that previous to his
death, he and Tucker walked into the yard, and after ex-
pressing to each other their belief that he was dying Tucker
observed to the witness that there was a *great mistake* be-
twixt him and Hudgins which was not then rectified that, H.
had conveyed to him the east instead of the south half of
the qr. section on which he lived, and to correct the mistake
H. had conveyed to him the quarter of the said quarter sec-

AUGUST TERM
1839.

Tombs,
vs,
Tucker,

B

tion necessary to correct the mistake, but that he T. had not on his part conveyed to H. the quarter necessary to correct the mistake, that he T. would have made to H. the deed at the same time H. made to him the last deed, but his wife was not present to relinquish her right of dower: the witness stated that the deceased was a sensible man, and knew as much about his land, and how it was situated and his title papers, as any body; two other witnesses on the part of the complainants testified to similar admissions by Tucker, made after the execution by H. of the second deed to T. A witness produced on the part of the respondent, stated that he went to the house of the deceased before his death, and learned that Tucker was carrying timber to build a house on the South West quarter of the said quarter section and having before understood that a mistake had been made by conveying to T. the east instead of the South half of the quarter section, the witness observed to H. that T. was wrong for building on that quarter, as it had not by mistake, been conveyed to him, to which the deceased Hudgins replied, pshaw, there was no mistake at all and that he intended to convey that quarter to Tucker, he knew what he was about, and that Tucker was right, that as the deceased was returning from the election on the 15th of August the day on which the last deed was executed, he told the witness he had just made Tucker a deed for that forty and that the children were all saying there was a mistake, but there was no mistake at all, and Tucker had a good home. Another witness a grand daughter of the deceased and niece of Tucker's, wife testified that as the deceased was returning from Richmond, on the day he made the last deed to Tucker he told witness he had given Tucker a good home. Witness said to him, what about the mistake, and the deceased said there was no mistake about the land. Another witness stated, that soon after H. had made the first deed to Tucker, Tucker came to the witness and told him that Ballard Hudgins (son of the deceased) said there was a mistake in the land the old man had conveyed him and if so he wished it rectified, and desired the witness to go with him to the old man and mention it to him, that they did so and Tucker said to

the deceased "now, Mr. Hudgins Ballard says there is a mistake in the land you have conveyed to me and if so I am ready to rectify it," to this the old man made no reply continuing to walk the floor and when the matter was urged upon him two other times he replied in a very indifferent manner as if he wished to avoid any further questions on that subject "that if there was any mistake he reckoned it could be corrected," and walked out of the room. This is not all the testimony offered by the respondant, but the most material. From the evidence of the complainants, it appears that the deed first made to Tucker was made with great deliberation, it was stated that the deceased was a sensible man and knew as much of his lands and how they were situated and of his title papers as any man did. · The writer of the deeds observed that the deceased, when the first deed was written, took out two patents one for each half of the quarter section and after a careful examination handed him the patent for the east half, and that the deed was written according to his directions, and carefully read over to him by the witness, who asked him if it was right and that Hudgins answered it was all right. It is difficult to conceive how an intelligent man (such he is represented to have been) could under such circumstances make a mistake, but when we add to this that he told two different persons at different times that there was no mistake and that when Tucker, after receiving the first deed and before the execution of the second, went to him to learn if a mistake had really been made—he not only did not admit that any mistake was made but discovered a manifest indisposition to speak about the matter, we are driven to the conclusion that the deceased committed no mistake in conveying to Tucker in the first instance the east half of the quarter section, and that he never intended Tucker to convey him the North east quarter of the quarter section in the bill mentioned. Ballard Hudgins appears to have been the only person to suggest the mistake, and we cannot avoid concluding that the misterious conduct of the deceased was intended by him to prevent his other children from annoying him with complaints about his liberality to Tucker, who it seems from the testi-

AUGUST TERM 1839.

Tombs,
vs,
Tucker,

A court of equity will not set aside a conveyance on the ground of mistake, unless it is clear from the evidence that the party conveying acted under a mis take or misconception in relation to the property conveyed.

AUGUST TERM
1839.

Tombs,
vs
Tucker,

The declaration of the defendants that there was a mistake in the conveyance would be strong evidence against him, in the absence of evidence showing clearly that no mistake was made.

mony, had then lately come to the country and in the words, of the witness, had married the pet of the deceased, that is, to say in other words, the youngest daughter. Nor is it any injury to the claim of Tucker that he seems to have been himself under the impression the deceased expected him to reconvey to him the North east quarter of that quarter section. His declaration at several times made of his promise to recover would have been strong evidence of his liberality, had it not been so clearly established that the deceased made no mistake and never intended him to reconvey. The decree of the circuit court appears to me to be very correct. Each party pays his own costs because we are to presume that when the complainants filed their bill, they did not know what testimony could be produced against them, and by their own testimony they made out a strong case.

The decree of the circuit court is affirmed, and the appellants will pay costs, the incurred by the prosecution of the appeal.

Adams for appellants.

To reverse the opinion of the circuit court the appellants will rely upon the following points and authorities.

1. "That the court had full power to correct the mistake, see 2d John Ch. Rep. 585, Storys Equity 154.

2. That the proof was sufficient to shew the mistake and if so the court should have made a decree correcting it.

3. That if the proof was not sufficient to correct the mistake, it was at least sufficient to shew that the second deed was fraudently obtained and consequently a decree should have been made to set it aside.

Wilson for appellant.

. "In the first place we contend that the evidence of the mistake in this case is not sufficient. The books lay it down that such evidence, in such cases, must be "clear and certain," of the "clearest and most satisfactory character," that it must be "irrefragable proof &c;" see, as the great leading case on this subject Gellespie vs Moore, 2 J. Ch. R. 585, Syman vs United States Insurance Co. 2 J. C. R 630 Executors of Getman vs Bundly 2 J. C. R. 274, Johnsons

digest 227. 1. Maddox ch. 50, (N. 2.) 1 semi annual part Mo. R. 62 Bartlett vs Glascock.

In the 2d place, we contend that it is not only necessary to prove the mistake with sufficient certainty, but to prove the real agreements between the parties. Johnsons digest 228, Gellispie vs Moore, 2 J. C. 585, Syman vs United Insurance C. 2. J. C. R. 630.

In the third place, that the acknowledgment of the defendant alone is not conclusive evidence to bind him. Gellispie vs Moore."